USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SERGEI CHEPILKO,

                  Plaintiff,

- against -

CIGNA GROUP INSURANCE,

                  Defendant.

**REPORT AND RECOMMENDATION**

**08 Civ. 4033 (JGK) (RLE)**

---

**To the HONORABLE JOHN G. KOELTL, U.S.D.J.:**

### I. Introduction

*Pro Se* Plaintiff Sergei Chepilko ("Chepilko") filed a Compliant against Defendant CIGNA Life Insurance Company of New York ("CLICNY") on or about March 31, 2008, raising claims under the Employee Retirement Income Security Act. The Honorable John G. Koeltl discontinued this action on March 2, 2010, after he received a report that the case had settled. (Doc. 43.) On August 25, 2010, Chepilko filed a motion to reopen the case, claiming that the discontinuance order was based on incomplete information, and that the Parties had not reached a settlement. (Doc. 46.) CLICNY opposes Chepilko's motion, contending that the Parties entered into an enforceable settlement agreement. For the reasons that follow, I recommend that Chepilko's motion be **GRANTED**.

### II. Background

On February 23, 2010, the Parties appeared for a settlement conference before the undersigned, and the Court recommended a dollar amount to settle the case. Following the recommendation, the Court inquired about whether the settlement involved any subsidiary issues in addition to the monetary amount, and CLICNY said that the agreement would include a confidentiality clause. The Court explained to Chepilko that a standard confidentiality agreement

would require that he not disclose information about the settlement, and Chepilko stated that he understood. The Parties were allowed time to consider the recommendation, and each Party called chambers separately to indicate acceptance. On March 2, after learning that the Parties had agreed to settle, Judge Koeltl signed an order discontinuing the case with prejudice, but allowing Chepilko to restore the action to the calender within thirty days of the order. (Doc. 43.)

When CLICNY received notice of Chepilko's acceptance, it unsuccessfully attempted to contact him by phone, and sent him copies of a draft settlement agreement by email and regular mail. (Def.'s Opp. to Pl.'s Mot. to Reopen ("Def.'s Opp."), Ex. 9.) On March 11, CLICNY informed the Court by letter that Chepilko had been unresponsive to its attempts to finalize the agreement, and requested the Court intervene to enforce the terms of the settlement agreement. (*See* Def.'s March 11, 2010 Letter.) Chepilko contends that he notified the Court on March 15 that he had received a copy of CLICNY's letter, and explained that he needed time to respond because he disagreed with a number of the provisions in the settlement agreement that were not discussed at the settlement conference. (Pl.'s Mot. to Reopen ("Pl.'s Mot."), Ex. A.) Specifically, he stated that he had concerns with the release and a non-disclosure clause in the settlement agreement, and requested more time to get legal advice about the agreement. (*Id.*)

The Court convened another conference on May 20, at which Chepilko stated that when he accepted the recommendation he didn't know that it would include a $10,000 liquidated damages provision. Chepilko also complained that the draft agreement didn't explain what CLICNY needed to show to prove a breach of the non-disclosure clause, and that it did not allow him to share information about the settlement with his accountant and the IRS. Chepilko also stated that he did not receive a copy of Judge Koeltl's March 2 discontinuance order, and was

not aware that the case had been dismissed.¹ (Pl.'s Reply Affirm. in Supp. of Mot. to Reopen ("Pl.'s Reply"), ¶ 11.)

Following the second conference, CLICNY offered to reduce the liquidated damages clause to $1,000; to state in the agreement that it had to prove a breach by clear and convincing evidence to obtain liquidated damages; and to make clear that Chepilko was permitted to disclose the settlement details to his accountant and the IRS. (Def.'s Opp. at 4; Ex. 10) On May 21, CLICNY forwarded Chepilko a draft agreement containing those revised terms. (*Id.*, Ex. 10.) Chepilko refused to sign the agreement, and requested that CLICNY consent to restore the case to active status. (*Id.*, Ex. 11.) After CLICNY did not consent, Chepilko wrote Judge Koeltl on May 25 (*Id.*, Ex. 12), requesting that the case be reinstated because the discontinuance order was based on incomplete information. (Pl.'s Mot., Ex. A.) Chepilko's formal motion to reopen followed on August 25, 2010. (*Id.*)

### III. Discussion

#### A. Enforceability of Purported Oral Settlement Agreement

Settlement agreements are contracts and therefore must be construed according to general principles of contract law. *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999).² In determining whether oral agreements are enforceable in the absence of a fully executed document, courts are guided by the intent of the parties as demonstrated by their

---

¹ At the May 20 conference, CLICNY stated that it received a copy of the order via ECF, and that it did not receive a copy via regular mail. The March 2 discontinuance order does not note whether Chepilko was sent a copy by mail. (*See* Doc. 43.)

² The Second Circuit has left open the question of whether state or federal law controls the enforceability of oral settlement agreements, *see, e.g., Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1283 n. 3 (2d Cir. 1996), but has consistently held that New York law and the federal common law are materially indistinguishable with regard to enforceability. *Ciaramella v. Readers' Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997); *see also Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007).

3

"words and deeds." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Four factors guide the inquiry regarding whether parties intend to be bound by a settlement agreement in the absence of a document executed by both sides:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Ciaramella*, 131 F.3d at 323 (citing *Winston*, 777 F.2d 78, 80). Each of these factors is intended to provide significant guidance. *Kaczmarczyk v. Acme Contracting*, 06 Civ. 1005, 2009 WL 3739442, at *3 (E.D.N.Y. Nov. 3, 2009) (citing cases). "Once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement and the time it is reduced to writing." *Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC*, 04 Civ. 1621, 2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (quoting *Macdonald v. Dragone Classic Motor Cars*, 95 Civ. 499, 2003 WL 22056626, at *6 (D. Conn. Apr. 29, 2003)). New York public policy dictates that settlement agreements to end litigation are "strongly favored and may not be lightly cast aside." *Willgerodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (citing *Rivera v. State*, 115 A.D.2d 431, 432 (1st Dep't 1985)).

It is undisputed that Chepilko never signed a settlement agreement. Chepilko contends that when he accepted the Court's settlement recommendation, he was not aware that CLICNY sought to include a $10,000 liquidated damages provision or that CLICNY would categorically decline responsibility for any current or future liens related to their denial of his long-term disability benefits. (Pl.'s Mot., Ex. B.) CLICNY argues that Chepilko irrevocably agreed to a settlement when he called to accept the recommendation, and that his motion to reopen should

4

be denied accordingly. (Def.'s Opp. at 5.)

## 1. Express Reservation

Although neither Party expressly reserved the right to be bound absent a signed settlement agreement, the draft settlement agreement that CLICNY sent to Chepilko after the first settlement conference conditioned its payment to him on his "fully execut[ing]" the agreement. (Def.'s Opp., Ex. 9, Confidential Release of All Claims, ¶ 6.)[3] This provision indicates that CLICNY did not intend to be bound by the agreement until it was fully executed because it would have withheld payment absent a signed agreement. *See Ciaramella*, 131 F.3d at 324 (finding that the inclusion of provisions in a settlement agreement requiring the signature of a party to be effective militated in favor of finding that the parties only intended to be bound by a signed agreement). The draft agreement further provided that the Parties agreed to file a stipulation of dismissal with prejudice after Chepilko received the funds, following his execution of the agreement. (Def.'s Opp., Ex. 9, Confidential Release of All Claims, ¶ 7.) Because Chepilko's receipt of funds and a joint stipulation of dismissal were contingent upon his execution of the agreement, the Court finds that the first *Winston* factor favors not enforcing the oral settlement agreement.

## 2. Partial Performance

Partial performance occurs when one party has partially performed, and "that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella*, 131 F.3d at 325. There was only partial performance of the purported settlement

---

[3]The entire provision reads: "RELEASED PARTIES agree that when REALSOR fully executes this Confidential Release of All Claims, RELEASED PARTIES will pay to the RELEASOR, the sum of **[REDACTED]**, of which the receipt and sufficiency hereof is acknowledged, in fully consideration and inducement for this Agreement. Payment will be made in the following manner: by check payable to Sergei Chepilko." (Def.'s Opp., Ex. 9, Confidential Release of All Claims, ¶ 6.)

5

agreement to the extent that CLICNY drafted an agreement after learning that Chepilko had accepted the Court's recommendation. Upon receipt of the draft agreement, Chepilko never indicated that all of the terms of the draft agreement were acceptable to him, and no consideration was ever exchanged between the Parties. Indeed, not only did Chepilko never state that he accepted the draft agreement, he consistently objected to the inclusion of certain provisions. Accordingly, the Court finds that there has been no partial performance, and the second *Winston* factor favors not enforcing the oral settlement agreement.

### 3. Agreement to All Terms

When evaluating whether parties have agreed to all the terms of a settlement agreement, the Second Circuit has stated that:

> [E]ven "minor" or "technical" changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing. *See Winston*, 77 F.3d at 82-83. Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing "satisfactory to both sides in every respect." *See Id.*; *see also R.G. Group, Inc., v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984) ("A . . . factor is whether there was literally nothing left to negotiate or settle, so that all that remained to be done was sign what had already been fully agreed to.")

*Powell*, 497 F.3d at 130. Here, CLICNY contends that Chepilko agreed to all the terms of the settlement when it accepted the Court's recommendation on February 24. (Def.'s Opp. 6.) To the extent that Chepilko did not agree to all the terms at that point, CLICNY argues that all of Chepilko's objections to the agreement were resolved following the second conference, and there are no outstanding issues regarding settlement terms. (*Id.*)

As an initial matter, the Court finds that Chepilko knew that the settlement would include a confidentiality clause when he accepted the Court's recommendation on February 24. At the February 23 settlement conference, CLICNY stated that the agreement would include a standard

6

confidentiality clause, and the Court discussed the clause with Chepilko. Notwithstanding Chepilko's general understanding that there would be a confidentiality clause, he was not aware of the particular details of the provision when he responded affirmatively to the recommendation. (*See* Pl.'s Reply, ¶ 6.) Specifically, he did not know that the agreement included a $10,000 liquidated damages provision or what CLICNY would need to show in order to prove a breach. (Pl.'s Mot., Ex. B.) Although CLICNY indicated that it would use its standard agreement, and liquidated damages provisions are sometimes included in confidentiality agreements to insure compliance, the magnitude of the provision was not conveyed prior to Chepilko's response to the Court. Chepilko's objection to the terms once he learned of them, coupled with his refusal to sign the agreement, indicates that there were still settlement details to negotiate following his acceptance of the Court's recommendation. The Court therefore finds that all of the settlement terms were not agreed upon when Chepilko gave his affirmative response to the Court's recommendation.

The Court further finds that the changes CLICNY made to the agreement following the May 20 conference did not resolve the disagreement between the Parties. At the conference, the Court noted that the contested provisions of the agreement primarily centered upon the amount of liquidated damages and what CLICNY would have to show in order to prove a breach. Although CLICNY subsequently provided Chepilko with a revised settlement agreement that responded to his concerns, Chepilko never accepted the agreement, either orally or in writing. Indeed, less than one day after receiving the revised agreement, Chepilko requested CLICNY consent to restoring the case to active status. (Def.'s Opp., Ex. 11.) The Court finds that there remained settlement terms to negotiate following the second conference and, notwithstanding the revised settlement agreement CLICNY sent to Chepilko, the Parties failed to reach an agreement

on those terms. Accordingly, the Court finds that the third *Winston* factor favors not enforcing the purported settlement agreement because the Parties were unable to reach an agreement regarding all the terms, particularly the liquidated damages provision.

### 4. Type of Agreement

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. New York law provides that certain formalities must be observed in order for settlement agreements to be enforceable:

> An agreement between the parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

N.Y. C.P.L.R. 2104. In this case, the settlement agreement was neither signed by the Parties nor reduced to the form of an order and entered. Therefore, it can only comport with the requirements of C.P.L.R. 2104 if it satisfies the requirements of the "open court" exception. Relying upon *In re Dolgin Eldert Corp.*, 31 N.Y.2d 1 (1972), CLICNY contends that the "open court" exception was satisfied in this case on February 24, when Chepilko called the Court's chambers, told a clerk that he accepted the Court's recommendation, and the clerk noted his acceptance. (Def.'s Opp. at 5.)

The Court finds CLICNY's reliance on *In re Dolgin Eldert Corp.* is misplaced. In that case, the Court of Appeals held that an oral agreement purportedly made between counsel at an informal conference before a judge in chambers was not made in an "open court" and therefore was not enforceable. *In re Dolgin Eldert Corp.*, 31 N.Y.2d at 9-10. The court noted that "open court" is a "technical term" that refers to a "judicial proceeding in a court, whether held in public or private, and whether held in the court house, a courtroom, or any place else, so long as

it is, in an institutional sense, a court convened, with or without a jury, to do judicial business." *Id.* at 4-5. Although the court noted that whether a clerk made a formal entry of the proceeding was a factor to consider in evaluating whether a proceeding qualified as in "open court," the court did not indicate that a clerk's entry alone was sufficient. Here, Chepilko's affirmative response to the Court's recommendation was given over the telephone to a court clerk outside the presence of a judge. A *pro se* litigant such as Chepilko cannot be imputed to understand that contacting chambers at the Court's instruction with a response to a settlement recommendation might be viewed as akin to a judicial proceeding. As a result, the Court finds that Chepilko's conversation with a court clerk does not qualify as a proceeding in "open court" sufficient to satisfy the requirements of C.P.L.R. 2104,[4] and that the fourth *Winston* factor favors not enforcing the purported settlement agreement.

In sum, the Court finds that all four *Winston* factors favor not enforcing the purported oral settlement agreement, and that CLICNY and Chepilko did not form a binding settlement agreement.

## B. Chepilko's Motion to Reopen

Because the Court concludes that no binding settlement agreement was reached between the Parties, the question becomes whether Chepilko's failure to request that the case be reinstated within thirty days of the discontinuance order may be excused. Federal Rule of Civil

---

[4] The Court notes that the "open court" exception in C.P.L.R. 2104 refers, by its terms, only to agreements "made between counsel," and not to an agreement between counsel and a party. *Silas v. City of New York*, 536 F. Supp. 2d 353, 356 (S.D.N.Y. 2008). Some courts in this district have interpreted the statutory language of the rule to mean that "that a *pro se* litigant cannot be bound by way of an 'open court' agreement." *Massie v. Metropolitan Museum of Art*, 651 F. Supp. 2d 88, 97 (S.D.N.Y. 2009); *see also Silas*, 536 F. Supp. 2d at 356. Other courts have reached the opposite conclusion, holding that settlement agreements made in open court may be binding on *pro se* litigants. *See Willgerodt*, 953 F. Supp. at 560 n. 2; *Jacobs v. Jacobs*, 229 A.D.2d 712 (3d Dep't 1996). Because the Court finds that Chepilko's telephone conversation does not satisfy the "open court" exception, the Court does not reach the question of whether the "open court" exception could ever apply to him given his *pro se* status.

9

Procedure 60(b)(6) provides that, in addition to a number of other stated reasons, a Court may relieve a party from an order for "any other reason that justifies relief." Despite the broad wording of this section, courts have held that it is properly invoked only for "extraordinary circumstances or where the judgment may work an extreme and undue hardship." *In re Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981) (internal citations omitted).

Here, Chepilko has stated that he never received a copy of the discontinuance order and was unaware that the case had been dismissed until he appeared at the May 20 conference. The order does not indicate that Chepilko was sent a copy by mail (*See* Doc. 43), and CLICNY stated at the settlement conference that it received notice of the order via ECF, although the action had been designated a non-ECF case. There is no evidence which contradicts Chepilko, and the Court therefore finds that Chepilko did not receive notice of the order until May 20. Five days after learning that the case had been dismissed, he wrote the Court and requested the case be reinstated because a settlement had not been reached . (*See* Pl.'s Mot., Ex. A.) The Court finds that to allow the dismissal with prejudice to stand when Chepilko did not receive notice of the dismissal order, and when he was unable to ultimately consummate a settlement agreement, would work an extreme and undue hardship on him. The Court accordingly recommends that Chepilko's motion to reopen be **GRANTED** pursuant to Rule 60(b)(6).

### IV. CONCLUSION

For the foregoing reasons, the Court recommends Chepilko's motion to reopen be **GRANTED** because an enforceable settlement agreement was not reached by the Parties and Chepilko did not receive timely notice of the discontinuance order.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written

objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable John G. Koeltl, 500 Pearl Street, Room 1030, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**SO ORDERED this 2nd day of February 2011**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:
Plaintiff:
Sergei Chepilko
501 Surf Avenue, Apt. 13A
Brooklyn, NY 11224

Defendant:
Abigail Deborah Rubin
Wilson, Elser, Moskowitz, Edelman & Dickler, LLP
3 Gannet Drive
White Plains, NY 10604